UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DANIEL L. SELF, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 4:00CV1903 TIA |
| ) | |
| EQUILON ENTERPRISES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Strike Expert Reports (Docket No. 486). Defendants request that the Court strike certain expert reports submitted by Plaintiffs for failure to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and the Case Management Order ("CMO") and strike the Report of Richard Berliner (the "Berliner Report") in its entirety pursuant to Federal Rule of Evidence 702. In the instant Memorandum and Order, the Court addresses the motion as directed to the expert reports of Richard Berliner and Steward Dudley.

Under the current CMO, Plaintiffs were required to disclose their expert witnesses and produce expert reports by March 30, 2007, with the exception of the accounting report of Stewart Dudley due on April 3, 2007. On March 30, 2007, Plaintiffs served the Berliner Report. On April 3, 2007, Plaintiffs served the Report of Stewart Dudley ("Dudley Report") setting forth his opinion regarding transfer price and damages.

**I.  Berliner Report**

Richard Berliner is an Operations Manager, a petroleum marketing executive, for Q Stop

Convenience Stores and Carwashes, LLC.[1] His curriculum vitae outlines his experience in relevant part as follows:

> Eighteen years of experience in the retail motor fuel field including sixteen years in various positions with Ronsick's Oil Company reaching the office of President in 1998. Duties included setting retail motor fuel prices and developing pricing strategies based on market conditions and retail competition, selecting potential sites for acquisition or development of retail motor fuel facilities, and overseeing all aspects of the day to day operations of a company that operated seventeen retail motor fuel facilities. Currently employed as Operations Manager for Q Stop, LLC, operators of Retail Facilities offering motor fuel, car washes, and convenience store items in the St. Louis Metropolitan Area. Current responsibilities include setting motor fuel pricing strategies and overseeing the day to day operations of the company.

Defts' Mot. to Strike, Berliner Report at p. 5.

Berliner opined in the report that he "was asked to visit the twenty-nine sites in question and formulate an opinion on what the subject sites areas of competition were. I was asked to draw on my experience of managing and pricing retail motor fuel facilities along with selecting potential sites for development or acquisition and draw my conclusions based on my experience of what factors most greatly affect motor fuel volume and profitability." Defts' Mot. to Strike, Berliner Report at p. 5.

Defendants contend that Berliner does not have specialized "knowledge, skill, experience, training, or education" regarding the subject to which he will offer an opinion as required by Federal Rule of Evidence 702. Berliner, in his report identifies his relevant experience as 18 years of experience in the retail motor fuel field with his current responsibilities including setting motor fuel pricing strategies and overseeing the day-to-day operations of the company. The report is devoid of any information about his educational background or his training or experience in any field of

---

[1]Q Stop, LLC, are operators of retail facilities offering motor fuel, car washes, and convenience store items in the St. Louis metropolitan area.

economics, much less antitrust economics.[2] Defendants assert that the mere fact that Berliner may have experience in setting retail motor fuel prices and developing pricing strategies based on market conditions does not render him qualified to offer opinions as to antitrust economics and relevant market analysis simply because motor fuel is at issue in the instant case. Defendants also contend that his testimony should be stricken, because his conclusions were not based on proper facts and data and his methods were wholly unreliable. Defendants note that Berliner employed no consistent methodology in reaching his opinions and visited the sites of Plaintiffs' stations on two different days in May 2006, and generally considered traffic patterns and other characteristics around the sites.

In response, Plaintiffs contend that Berliner does not purport to be an antitrust economist, but he should be permitted to testify as an industry expert. Plaintiffs represent that Berliner's testimony would cover "the scope of competition between gasoline retail outlets ***"as perceived"*** by those in the gasoline industry. Plaintiffs argue that Berliner is qualified to testify regarding the factors a gasoline marketing executive would consider in evaluating Plaintiffs' station locations, including the locations with which they competed.

Plaintiffs have the burden of establishing the admissibility of Berliner's testimony. Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001). To be admissible, expert testimony must be both relevant to a material issue and reliable. Margolies v. McCleary, Inc., 447 F.3d 1115, 1120 (8th Cir. 2006). "[G]eneral business experience unrelated to antitrust economics does not render a witness qualified to offer an opinion on complicated antitrust issues such as defining relevant markets." Berlyn, Inc. v. The Gazette Newspapers, Inc., 214 F. Supp. 2d 530, 536 (D. Md. 2002).

---

[2] As conceded by counsel during the hearing on June 27, 2007, Berliner is not an economist.

Under Federal Rule of Evidence, 702, if

> specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Applying the foregoing to the Berliner Report, the undersigned finds that Berliner is not qualified and even if qualified, his opinion is not reliable, in that it is based on insufficient facts and unsound methodology for the reasons set forth. Berliner is not an economist. As noted by Defendants, the Court finds that Plaintiffs concede that Berliner is unqualified to render an opinion as to the relevant geographic market by arguing that they do not "rely on Mr. Berliner's expertise for 'complicated antitrust issues such as defining relevant markets.'" Thus, Berliner's expert report clearly purports to render an expert opinion defining the relevant geographic market in contradiction to Plaintiffs' concession that he is unqualified to offer such opinions. The Berliner Report fails to establish Berliner to be qualified to render an expert opinion defining the relevant geographic market and opinions as to antitrust economics and relevant market analysis. The record before the Court fails to establish how Berliner has specialized "knowledge, skill, experience, training, or education," regarding the subjects to which he proffered opinions as mandated by Rule 702. Fed. R. Evid. 702. Accordingly, the Court finds that Berliner is unqualified to offer an opinion as to the relevant market due to his lack of training and expertise in economics and antitrust. See also Virginia Vermiculite Ltd. v. W.R. Grace & Co.- Conn & The Historic Green Springs, Inc., 98 F. Supp. 2d 729, 733 (W.D. Va. 2000) ((ptgnMarket analyses for antitrust markets generally require some expertise in the field of industrial organization. Individuals with experience in defining markets for [a given product]

generally would not possess the skill and training of a professional economist necessary to define a relevant market for antitrust purposes.").

Likewise, the undersigned finds that Berliner's report is unreliable due to methodological flaws. A review of his report shows that Berliner employed no consistent methodology in reaching his opinions, but in fact, visited the sites of Plaintiffs' twenty-nine stations on two different days in May 2006, and generally considered traffic patterns and other characteristics around the sites. In the Report, Berliner opined that "based on 18 years of retail motor fuel pricing experience and my review of the locations and facts of this case, that the Plaintiffs' locations not only competed with one another but also with other motor fuel stations throughout the St. Louis Metropolitan Area, including numerous other Shell motor fuel stations, based on traffic patterns their potential customers were following." Defts' Mot. to Strike, Berliner Report at p. 26. The Court finds that the principles and methods used by Berliner in reaching his opinion are unreliable inasmuch as Berliner based his opinion on his own experience in the retail motor fuel field, drawing on his observations of the twenty-nine stations over a two-day period of time without properly formulating his methodology based on specific facts, research, and established economic principles. Indeed, the Report is devoid of any analysis of economic principles of customer buying patterns in relation to retail price differences between Plaintiffs' stations and the alleged competitor stations. Accordingly, the Court will strike the Berliner Report in its entirety.

**II.    Dudley Report**

Defendants contend that the Dudley Report fails to comply with the mandatory requirements of Rule 26(a)(2)(B) inasmuch as his report is comprised of 125 words of one-sentence conclusions, excluding his qualifications and other preliminary matters. Defendants assert that Dudley's Report

is deficient in that it fails to provide the "how and why" of his ultimate conclusions. For instance, Defendants note how Dudley's Report fails to include the calculations on which he relies on in reaching his damages calculations for Plaintiffs' VRP claims.

In response, Plaintiffs contend that Dudley's Report regarding Equilon's profit and loss statements complies with the Rule inasmuch as Plaintiffs produced 866-pages of documents as his work file detailing Dudley's calculations on May 17, 2007.

In the Conclusions section of the report, Dudley opines as follows:

> 1. Defendants' Combined Statement of Compliance with the Court's March 17, 2006, Order and Motion for Clarification (April 14, 2006) states that 'Defendants have produced responsive documents in the form of RTW pricing data and profit and loss statements for company operated stations.' A comparison of the 2000-2002 profit and loss statements of company operated stations and the spreadsheets showing Plaintiffs' RTW prices in the same trade areas shows that the company operated stations were not charged RTW as their cost of fuel. Plaintiffs' RTW prices exceeded the stated fuel costs on the profit and loss statements of the company operated stations.
>
> 2. Defendants discontinued the Variable Rent Program (VRP) on July 31, 1998. After that time, Plaintiffs paid additional rental charges ranging from $1,000,000 to $1,500,000.
>
> 3. Statutory interest will be calculated at trial.
>
> As of the date of this report, the foregoing represents Mr. Dudley's best opinion regarding the matters set forth above. As additional information or testimony is available, Mr. Dudley may find it appropriate to revise or supplement his opinions, analysis and conclusions.

Defts' Mot. to Strike, Dudley Report at p. 4-5.

Under Rule 26(a)(2)(B), an expert must submit a signed written report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor" and "the data or other information considered by the witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B). Rule

26(a)(2), in conjunction with the Court's CMO, is essential to the judicial management of the case. See Sylla-Sawdon v.Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995). Courts do not enter scheduling orders "merely to create paperwork for the court's staff," but more so, to delineate a specific time frame enabling counsel to ensure "the expeditious and sound management of the preparation of cases for trial." Rice v. Barnes, 201 F.R.D. 549, 551 (M.D. Ala. 2001). Discovery disputes and disregard for the Court's CMO in the instant action have prolonged the completion of discovery in this case. This case has been pending more than six years.

A review of the Dudley Report shows how the report fails to comply with either the letter or the spirit of Rule 26(a)(2).[3] The report fails to delineate the how and why Dudley reached the conclusions he reached or substantiate his opinions. Finwall v. City of Chicago, 239 F.R.D. 494, 501 (N.D. Ill. 2006) (the report "must not be 'sketchy, vague or preliminary in nature.'"). The report fails to set forth the calculations that Dudley relies on in reaching his damages calculations for Plaintiffs' VRP claims. Plaintiffs' attempt to substantiate Dudley's report by citing to the 866-pages of

---

[3]The 1993 Advisory Committee Notes for Rule 26(a)(2) provide in relevant part:

This paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses. Normally the court should prescribe a time for these disclosures in a scheduling order under Rule 16(b)....
***
Paragraph (2)(B) requires that persons retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor.... Revised Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed.

Fed. R. Civ. P. 26(a)(2)1993 advisory committee notes.

documents produced as his work file does not remedy his deficient report. The Eighth Circuit has cautioned: "Discovery of expert opinion must not be allowed to degenerate into a game of evasion." Voegeli v. Lewis, 568 F.2d 89, 97 (8th Cir. 1977). "[T]he purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." Greyhound Lines, Inc. v. Miller, 402 F.2d 134, 143 (8th Cir. 1968).

Under Rule 37(c)(1), a party must show "substantial justification" for failing to disclose information required by Rule 26(a). The Court notes at the time Plaintiffs submitted the Dudley Report, they did not move for additional time to supplement his report. "The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial order is essential" to judicial management of the case. Admiral Theatre Corp. v. Douglas Theatre Co., 585 F.2d 877, 897-98 (8th Cir. 1978). Plaintiffs have failed to establish substantial justification.

Plaintiffs' assertion that Defendants should remedy the deficient expert report by taking Dudley's deposition imposes a burden on Defendants to elicit his opinions and bases for those opinions through deposition thereby prejudicing Defendants and violating the clear strictures of Rule 26(a)(2)(B). "Expert reports must include 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." Finwall, 239 F.R.D. at 501. As pointed out by Plaintiffs' counsel during the hearing, although the case has not reached the eve of trial, such possibility cannot be permitted to happen once again. Plaintiffs have failed to present any substantial justification for their failure to comply with Rule 26(a)(2), and their failure to comply with the Rule would have prejudiced Defendants and jeopardized the current CMO.

After reviewing the parties' pleadings and the record before the Court and considering the arguments presented at the June 26, 2007, hearing, the Court orders as follows:

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike (Docket # 486) is GRANTED as directed to the Berliner Report and the Dudley Report.

Dated this 29th day of June, 2007

                                                /s/ TERRY I. ADELMAN
                                    UNITED STATES MAGISTRATE JUDGE